Kapper, J.
Two actions for negligence were brought by the plaintiffs Keene and Horvath for personal *399 injuries sustained in a collision between an automobile in which they were riding and a railroad train of the Long Island railroad operated by the United ■States through the defendant as director-general of railroads, during the period" of Federal control. The accident happened January 2, 1920, the actions were commenced on the seventeenth of the same month, and were brought to trial at the March term of the Supreme Court held in Nassau county, both actions being tried together, the trial taking place on the ninth, tenth and eleventh days of March, following, on the last day of which the jury rendered verdicts in both cases for the defendant. Motions are now made to set aside the verdicts upon the ground that prior to the trial the defendant Hines, director general, etc., ceased to be the defendant, his authority to so appear having terminated at the beginning of the day of the 1st of March, 1920, by virtue of the provisions of the act of Congress known as the “ Transportation Act, 1920,” and, as a corollary, that there was at the time of the trial no one who could be defendant in said actions and that, therefore, the trial and verdicts were null and void. The controversy arises from the fact that the said “ Transportation Act, 1920 ” provided that Federal control of railroads “ shall terminate at 12.01 a. m. March 1, 1920.” The general scheme of that act was to turn back to their owners all railroads which during the war had been under Federal control, to preserve all pending actions and rights of action that arose and accrued during such Federal control and to continue such liability to be met from a fund of $300,000,000 appropriated by the act, this fund, called a “ revolving fund,” to be administered by an agent to be designated by the president within thirty days after the passage of said act. The act is almost inexhaustible in its terminology and no useful pur *400 pose will be subserved by a repetition of its -language here — at least, to do so would transgress the limits of what should be here written. I shall content myself, therefore, with a statement of the conclusions to which I have come. The motion should be denied for two reasons, (1) that there was no hiatus between the time of cessation of Federal control under the act and the time of the appointment of the agent by the president as required by the act; and, (2) that at the time of this trial such agent had been appointed and was such for the purpose of mailing these verdicts enduring verdicts in so far as the motions now made are concerned. First, a consideration of the act shows these features: From twelve-one a. m. March 1, 1920, the president was to cease the exercise of the powers conferred upon him by the theretofore adopted “ Federal Control Act ” relating to the use, operation and control of railroads for all general railroad purposes “ except in pursuance of contracts or agreements entered into before the termination of Federal control as a necessary and proper incident to the winding up or settling of matters arising out of Federal control, and except as provided in section 202.” See § 200, subd. 7. Section 202, so referred to, provides, “ The President shall, as soon as practicable after the termination of Federal control, adjust, settle, liquidate, and wind up all matters, including compensation, and all questions and disputes of whatsoever nature, arising out of or incident to Federal control.” Section 206 authorizes the commencement of actions which accrued during the period of Federal control against the agent to be designated by the president within thirty days after the passage of the act. Subdivision (d) of section 206, which provision is really the basis of this controversy, provides as follows: “Actions, suits, proceedings, and reparation *401 claims, of tHe character above described pending at the termination of Federal control shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by The President under subdivision (a).” Subdivision (e) of section 206 provides: “ Final judgments, decrees, and awards in actions, suits, proceedings, or reparation claims, of the character above described, rendered against the agent designated by the President under subdivision (a), shall be promptly paid out of the revolving fund created by section 210.” The last provision of the act to which reference should be made at this time is section 211, as follows: “All powers and duties conferred or imposed upon the President by the preceding sections of this Act, except designation of the agent under section 206, may be executed by him through such agency or agencies as he may determine.” To my mind, the scheme of this legislation is neither obscure nor uncertain. That there was to be a period of suspended animation between the time when the Federal control was to cease and the designation by the president of the agent mentioned in section 206, is certainly not expressed in the act, and I can conceive of no good reason why it should be implied; indeed, I go so far as to say that by every reasonable intendment and theory of construction of statutes there was no official or legal death of the defendant in these actions for the purpose of their maintenance, continuance and trial, down to the moment of the appointment of his successor, the agent to be designated by the president. To me it is plain that authority was given to the president to wind up and settle matters arising out of Federal control, even to adjusting, settling and liquidating, “ as soon as practicable after the termination of Federal control, of all questions and dis *402 putes of whatsoever nature, arising out of or incident to Federal control.” § 202, supra. Care was taken by congress that all actions “ pending at the termination of Federal control shall not abate by reason of such termination but may be prosecuted to final judgment.” § 206, subd. d, supra. Too much importance, it seems to me, is attached to the words following these last quoted, namely, “ substituting the agent designated by the president.” The vital thing is that actions were not abated and their prosecution to final judgment was expressly authorized. There was an agency in being, not only by fair inference resulting from a reading of the act itself, but also by express action of the president to which I shall presently make reference, such agency being the defendant in these actions. Nowhere in the act is he legislated .out of being nor denied the authority to remain the titular defendant in all actions arising out of Federal control, nor is there any expression prohibiting the entry of judgment against the director-general pending the appointment of the agent designated by the president; but, as I have already indicated, he was expressly continued by the power lodged in the president to exercise authority in matters involving the winding up and settling of all questions and disputes arising out of or incident to Federal control ; and acting in pursuance of the power, the president, on the 28th day of February, 1920, issued a proclamation in which, after reciting the provisions of section 211 of the act {supra) he designated and appointed the defendant director-general of railroads, “ to exercise and perform all and singular the powers and duties conferred or imposed upon me by provisions of said act of February 28, 1920, except the designation of the agent under section 206 thereof; and hereby confirm and continue in him, and his successors in office, *403 all powers and authority heretofore delegated under the Federal Control Act, approved March 21, 1918, except as such powers and authority have been limited in the said Act of February 28, 1920. ’ ’ The language of subdivision (d), section 206, supra, is not deserving of so narrow a construction as to make the continuance of an action dependent upon the agent having been substituted, and, in view of the general provisions of the statute and its purposes, those words should have no greater significance than that the agent, when appointed, should exercise the authority of administering the revolving fund for the liquidation and discharge of all liabilities which the Federal government had assumed during the period of its control. Certainly, such a construction is justified by the circumstances presented on these motions. The plaintiffs went to trial with full knowledge of the provisions of the act of Congress and by a practical construction of their own must be assumed to have recognized the construction which I have given the act. They may not now complain, in the light of the adverse result, and I am not prepared to say—although unnecessary to this decision-—-that the Federal agent could have complained had the verdict favored the plaintiffs here. At all events, the Federal agent does not now complain and for the purposes of these motions must be presumed to have ratified and adopted the trials and their outcome, as I think he would have had the right to have ratified and adopted a result adverse to him but which he might have regarded as reasonable and just against himself as agent under the particular circumstances. The case of Goldstein v. Hines, N. Y. L. J., March 10, 1920, presented an application for postponement upon the calendar call. Whether or not there should have been a postponement of the trial there sought by the *404 defense, rested in the sound discretion of the justice presiding. It was deemed advisable that the prosecution of the action there pending should be suspended until the designation by the president of the agent as provided in the act. I do not feel that the cases are sufficiently alike to require the construction there placed upon the act to be accepted in the present instance. Second, It is undisputed that these trials continued until the afternoon of March 11, 1920. By proclamation of the president issued on the 11th day of March, 1920, the president designated and appointed “ Walker D. Hines, Director General of Railroads and his successor in office as the Agent provided in Section 206 in said Act approved February 28, 1920.” This proclamation of the president pursuant to the authority of Congress must under well-accepted rules of interpretation be deemed to have been operative the entire day of March 11, 1920, and that means that the proclamation took effect at the commencement of the day, namely, at one minute after midnight of March 10, 1920. This interpretation was adopted by our Court of Appeals in reference to the approval by the governor of an act of the legislature, where it was held that, in the absence of evidence as to the precise time when it was approved, such act was in effect during the entire day on which it was approved. See Croveno v. Atlantic Avenue R. R. Co., 150 N. Y. 225. Under the circumstances here shown I think it cannot be said that there was no defendant in being during the trial of these actions, but, on the contrary, that there was, and that the agent is free to enter an order nunc pro tunc substituting himself as such agent in the place of himself as director-general. There was such an agent from and after midnight of March tenth and while this trial was in progress, and all of this must *405 be presumed to have been within the knowledge of the litigants, and it is now too late for the plaintiffs to raise the question after an adverse result. Their conduct, with knowledge of the law, was just as strong as though they had stipulated, and it has been held that jurisdiction of the person in an action for injury to the person may by stipulation be conferred upon the court so as to save the action from abatement by the death of the party. Cox v. N. Y. Central & H. R. R. R. Co., 63 N. Y. 414. And, so, as was said in Roberts v. Marsen, 23 Hun, 486, 489: “It would be unfair to allow the plaintiff to avail himself of the objection he now makes unless compelled to do so by some unbending rule of law, and none such exists in this case.” The motions should- be denied.
Motions denied.